IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| American Chemical Society, et al., | NO. C 06-04414 JW |
| Plaintiffs, v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SIXTH CAUSE OF ACTION OF THE SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| Commax Technologies, Inc., et al., | |
| Defendants. | |

## I. INTRODUCTION

The American Chemical Society and nine other publishers of scholarly journals ("Plaintiffs") bring this suit for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 et seq., California's Unfair Competition Act, fraud, conversion, and breach of contract. Plaintiffs allege that Commax Technologies, Inc., Commax Worldwide, and other individuals (collectively, "Defendants") generated a fraudulent scheme to purchase their scholarly journals at their individual subscriber rates and resell them overseas at much higher, institutional rates.

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Sixth Cause of Action of the Second Amended Complaint. (hereafter, "Motion," Docket Item No. 41.) The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS Defendants' motion to dismiss with leave to amend.

## II. BACKGROUND

Plaintiffs allege the following:

Plaintiffs are publishers of scholarly journals collectively numbering in the thousands, primarily in the sciences and social sciences.[1] The content of Plaintiffs' journals consists primarily of peer-reviewed articles, often describing original research, that are edited by noted scholars in their respective fields. (SAC ¶ 40.) Plaintiffs sell subscriptions directly to individuals and institutions, and to subscription agencies that act as intermediaries between subscribers and journal publishers such as Plaintiffs. (SAC ¶ 43.) Subscription agencies reduce institutional subscribers' paperwork and make billing and payment easier for publishers. Id.

Plaintiffs use tiered pricing, offering types of subscribers different subscription rates. (SAC ¶¶ 42, 44.) An "individual" subscription is for the use of a given individual. (FAC ¶ 44.) A "member" subscription is for the use of a member of the scholarly society that sponsors a particular journal. Id. An institutional subscription is for the use of a library or other institution, and its patrons and employees. Id. Institutional sale prices reflect the reality that copies owned by libraries or other institutions will be read by numerous people over time. (SAC ¶ 42.) Individual and member subscription prices are deeply discounted relative to institutional sale prices, and the latter make the journals economically feasible for Plaintiffs to produce. Id. Plaintiffs rely on the people placing subscription orders to identify truthfully the type of subscription that they need. (SAC ¶ 44.) Some publishers, including the majority of the Plaintiffs, make their tiered pricing system explicit by expressly forbidding resale or institutional use of individual subscriptions.[2] (SAC ¶ 45.) The revenue that Plaintiffs receive from journal subscriptions is critical to their financial health. (SAC ¶

---

[1] (Second Amended Complaint for Fraud, Breach of Contract, Conversion, Conspiracy, Violation of Racketeer Influenced and Corrupt Organizations Act (RICO), and Violation of California Unfair Competition Act ¶¶ 31-38, hereafter, "SAC," Docket Item No. 38.)

[2] Plaintiffs allege that AIP, Blackwell, Elsevier, Wiley, and Informa include language to this effect in their individual subscription agreements. (SAC ¶ 45.)

2

46.) They risk significant financial injury and a cessation of publication of one or more journals if they are not compensated for their work correctly. (SAC ¶ 47.)

At the direction of Defendants Henry and Daphne Chen (the "Chens"), Defendants used various addresses and identities, many of them false, to acquire subscriptions to Plaintiffs' journals and individual rates. (SAC ¶¶ 48-49.) The subscriptions were placed with Plaintiffs through U.S. Postal Service mail orders and the Internet, in the early autumn prior to the subscription year in question. Id. Defendants then resell these subscriptions to institutions in the Far East at prices below Plaintiffs' institutional rates, but above the individual subscription prices that Defendants have paid. Id. Several of the Individual Defendants are responsible for ordering the subscriptions or allowing them to be delivered to their home addresses. (SAC ¶¶ 50-60.) In total, Defendants have over 1500 subscriptions to Plaintiffs' journals that were fraudulently ordered using over 180 different names and 100 different addresses. (SAC ¶ 61.) Defendant Commax Worldwide ("Commax") is a subscription agency that is the "likely vehicle" to "resell journals obtained through fraud, without raising suspicion among customers." (SAC ¶ 65.)

With respect to Plaintiff Wiley ("Wiley"), Plaintiffs further allege:

Defendants have been obtaining and reselling electronic access to its journals, contrary to the express terms of Wiley's subscription agreement. (SAC ¶ 66.) Commax ordered electronic subscriptions to at least five Wiley journals, purportedly for the Taichung Veterans General Hospital. Id. Electronic subscribers are required to provide Wiley with Internet Protocol ("IP") addresses that could be used by hospital staff to obtain online access to the journals. Id. Acting on the subscriber's behalf, Commax provided Wiley not only with bona fide IP addresses, but with additional IP addresses of unrelated entities, such as the Taiwan Ministry of Education and the Taiwan Bureau of Employment and Vocational Training. Id. According to Plaintiffs, "[t]he inescapable inference is that said defendants sold electronic subscriptions to such unrelated entities, without paying Wiley for same, and 'piggybacked' access for such entities on the lawful access permitted to the Hospital." Id.

3

Wiley permits large institutions to order extra print copies of journals for ten percent of the institutional price, for internal use only. (SAC ¶ 67.) Commax has purchased these extra print copies, purportedly for the use of two institutional customers, a Taiwanese hospital and a university. Id. These institutions have told Wiley's customer service representatives that they subscribe to the electronic version of the journals only, and do not require print copies. Id. According to Plaintiffs, "the inescapable inference is that Commax Worldwide has been selling such extra copies to other institutions, presumably at or near the institutional subscription rate." Id.

Plaintiffs assert Counts 1, and 4-7 against all Defendants for Fraud; Breach of Contract; Conversion; violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and violation of California's Unfair Competition Act. Plaintiffs additionally assert Counts 2 and 3 against Defendants Commax Worldwide, Commax Technologies, Daphne Chen, and Henry Chen, for Fraud (2 counts). Presently before the Court is Defendants' Motion to Dismiss the Sixth Cause of Action of the Second Amended Complaint..

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistrer v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530-, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere legal conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). A complaint should not be dismissed under Rule 12(b)(6)

4

unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

### IV.  DISCUSSION

**A.    RICO**

Defendants move to dismiss Plaintiffs' Sixth Cause of Action for violations of RICO on the grounds that Plaintiffs have inadequately pled the "enterprise" element of their claim.  (Motion at 3-5.)

A plaintiff must allege four elements to state a violation of RICO: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sigmond v. Brown, 828 F.2d 8 (9th Cir. 1987).  An enterprise is defined in the RICO statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A RICO enterprise must possess three characteristics: (1) a common or shared purpose; (2) continuity of structure and personnel; and (3) an ascertainable structure distinct from that in the pattern of racketeering activity.  See Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

Plaintiffs contend that Defendants formed an "associated-in-fact" enterprise, and offer two related theories to explain why they have adequately alleged a decision making structure distinct from the racketeering activity.  The first theory relies on the involvement of the corporations Commax Technologies and Commax Worldwide ("Corporate Defendants"), which have an existence apart from the racketeering activity.  The second theory depends on the allegation that Henry and Daphne Chen are leaders and decision makers of the enterprise.  The Court considers these arguments in turn.

5

### 1. Corporate Defendant Involvement

Plaintiffs' first theory is that the involvement of the Corporate Defendants satisfies the requirement of a separate decision making structure, because those entities have a legal existence separate from the racketeering activities. (Plaintiffs' Opposition to Defendants' Motion to Dismiss Count 6 of the Second Amended Complaint at 6, hereafter, "Opposition," Docket Item Number 43.)

Involvement of a corporate defendant does not, in and of itself, fulfill the separate structure requirement. Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1111-12 (9th Cir. 2003); Chang v. Chen, 80 F.3d 1293 (9th Cir. 1996). A corporation that exists solely to defraud third parties in connection with the alleged racketeering activities, for example, would be inadequate. See United States v. Feldman, 853 F.2d 648, 660 (9th Cir. 1988). However, a corporation may fulfill the requirement if it: (1) made the RICO activities possible and profitable by providing a legal shield for the illegal activity, and (2) also functioned to achieve objectives that were not illegal.[3] Chang, 80 F.3d at 1300-01.

In the Second Amended Complaint, Plaintiffs attempt to plead shielding activity and legal corporate objectives, the two factors identified by the Ninth Circuit in Chang. They allege that Commax Worldwide and Commax Technologies are separate, incorporated entities that have lawful businesses as a subscription agency and a computer hardware manufacturer, respectively. (SAC ¶¶ 18-20.) They further allege that the subscription agency business is used as a guise in the resale of the fraudulently obtained subscriptions. (SAC ¶ 93.) It is unnecessary for the Court to determine the sufficiency of these allegations, however, because the Second Amended Complaint fails in a more basic respect. It remains the case that Plaintiffs have not alleged facts showing a decision making structure apart from the racketeering activity.

Corporate involvement operates to fulfill the separate structure requirement, not as an exception to it. Chang, 80 F.3d at 1300. Implicit in the discussion of the enterprise element in

---

[3] Other Ninth Circuit precedent indicates that illegal corporate objectives separate from the racketeering activity would also be sufficient. Webster v. Omnitrition Int'l., 79 F.3d 776, 787 (9th Cir. 1996).

6

1  Chang and other Ninth Circuit cases is the assumption that the corporation has a decision making
2  structure for carrying out its other objectives.[4]  The Second Amended Complaint fails to plead any
3  such structure.  For example, Plaintiffs allege no facts regarding the conduct of the corporation's
4  legitimate businesses, or more broadly, regarding any decision making not directly related to the
5  racketeering activities.  Although Plaintiffs allege on information and belief that the Chens are
6  officers of the Corporate Defendants (SAC ¶¶ 22, 23), they do not allege what their roles entail or
7  how decisions are made in the organization.[5]

8  Additionally, Plaintiffs do not allege facts connecting Individual Defendants other than the
9  Chens to the enterprise structure.  The Court finds Plaintiffs' allegation that they "are informed and
10 believe...that the other defendants are in some manner affiliated with [the Chens] and/or with
11 Commax Technologies" insufficient.  (SAC ¶ 49.)  Such an allegation could be satisfied with proof
12 of association between Individual Defendants and the Chens, irrespective of any affiliation with the
13 corporations.  If, as both parties contend in their papers, the requirements of Rule 9(b) apply to the
14 enterprise element of a RICO claim, the allegation is also defective as it is pled "on information and
15 belief."  See Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir. 1989).

16 The Court finds that the allegations regarding the corporate defendants do not suffice to
17 show a decision making structure separate from the racketeering activity, as required.

18 **2.  Leadership of Henry and Daphne Chen**

19 Plaintiffs second theory is that the allegations that Henry and Daphne Chen led and directed
20 the fraudulent subscription orders satisfy the separate structure requirement.  (Opposition at 7.)
21 Plaintiffs have alleged the following:

---

[4] Plaintiffs' cited cases, for example, either involve post trial review of criminal RICO convictions, or review of summary judgment.  In each case, the Ninth Circuit had before it evidence of the business activities of the involved corporations.  See Webster v. Omnitrition Int'l., 79 F.3d 776 (9th Cir. 1996); United States v. Feldman, 853 F.2d 648 (9th Cir. 1988), cert. denied, 489 U.S. 1030 (1989); United States v. Kirk, 844 F.2d 660 (9th Cir. 1988), cert. denied, 488 U.S. 890 (1988).

[5] Plaintiffs additionally allege that the Chens directed the fraud constituting the RICO violations.  (SAC ¶¶ 49, 93.)  However, as discussed in Section IV.B below, this fact is insufficient.

7

> 49. Plaintiffs are informed and believe that defendants Commax Worldwide, Commax Technologies, and Henry and Daphne Chen are the leaders and decision makers with respect to the fraud at issue and that the other defendants are in some manner affiliated with them and/or with Commax Technologies. Plaintiffs are informed and believe that Henry and Daphne Chen use Commax Worldwide and Commax Technologies, with their network of legitimate business as a subscription agency, as a vehicle for reselling the subscriptions fraudulently obtained by all defendants.
> ...
> 93. Defendants are an "enterprise," as defined by RICO: any "individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact." Plaintiffs are informed and believe that defendants Henry and Daphne Chen have directed the conspiracy described herein, not only placing subscription orders at individual rates themselves, but also directing the remaining defendants to place such orders as well. Using the legitimate subscription agency business of Commax Technologies and/or Commax Worldwide as a guise, they use such business to resell the fraudulently obtained subscriptions at institutional rates.

(SAC ¶¶ 49, 93.) The Court finds that the Second Amended Complaint does not allege a "structure for the making of decisions separate and apart from the alleged racketeering activities." Albright, 868 F.2d at 1392. It merely alleges that the Chens directed "the fraud at issue," and "the conspiracy described herein," i.e., the racketeering activities themselves.

Plaintiffs contend that the Chens' direction was "separate" from each instance of mail fraud that occurred when a subscription order was placed. (Opposition at 7.) This parses "racketeering activities" too finely. The decision making structure must be separate, not just from each narrowly defined act that would constitute a predicate offense, but from "that which was inherent in the alleged acts of racketeering activity." Chang, 80 F.3d at 1300. Were Plaintiffs' argument accepted, any decision making structure would count as separate, even if it was directed only towards racketeering: it would render the requirement a nullity.

Plaintiffs appear to have conflated the Court's statement in its prior order that the language from the Second Amended Complaint quoted above "provide[s] insight" into the enterprise element, with the idea that language itself would be sufficient to state a claim. (Order Granting in Part and Denying in Part Defendant's Motion to Dismiss at 14, Docket Item No. 32.) It does not. Plaintiffs do still appear able to correct their technical pleading failures and properly allege a RICO claim. Therefore, the Court dismisses Plaintiffs' Six Cause of Action for violation of RICO with leave to amend.

8

**B.     Supplemental Jurisdiction**

After dismissal of Plaintiffs' RICO claim, only state law claims remain in the action. The Court is not inclined to exercise its discretion to hear such claims. However, the Second Amended Complaint appears, on its face, to allege facts that would support diversity jurisdiction under 22 U.S.C. § 1332. Plaintiffs shall file an Amended Complaint which addresses this alternative basis for jurisdiction explicitly.

## V.  CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss the Sixth Cause of Action for violation of RICO with leave to amend. Plaintiffs shall file an amended complaint within thirty (30) days from the date of this Order.

Dated:  March 30, 2007

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Kimberly Ann Donovan kdonovan@gcalaw.com
Noel Matthew Cook ncook@owe.com
Sallie Kim skim@gcalaw.com
Thomas H. Carlson tcarlson@rjop.com
William S. Strong wstrong@kcslegal.com

Dated:  March 30, 2007          Richard W. Wieking, Clerk

                                By:   /s/ JW Chambers
                                      Elizabeth Garcia
                                      Courtroom Deputy

United States District Court
For the Northern District of California